**LUIS SOLA,** 15cv276 (WWE)

**v.**

**STATE OF CONNECTICUT JUDICIAL**
**BRANCH[1]**

**MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT**

In this action, plaintiff Luis Sola asserts that defendant the State of Connecticut Judicial Branch discriminated against him due to his ethnicity, heritage and national origin; retaliated against him for complaining about discrimination; and subjected him to a hostile work environment in violation of Title VII and the Connecticut Fair Employment Practices Act (CFEPA).[2]  Specifically, plaintiff bases his assertions of disparate treatment and retaliation on the circumstances of his suspension, an unfavorable evaluation, defendant's failure to provide him with evaluations for four years, and defendant's failure to promote him.   Defendant has filed a motion for summary judgment.   For the following reasons, defendant's motion for summary judgment will be granted in part and denied in part.

---

[1] Plaintiff's complaint also named the State of Connecticut as a defendant.   Defendant has pointed out that the State of Connecticut is not a proper defendant.   The Court agrees and will assume that the Judicial Branch is the only defendant in this action.

[2] Generally, Connecticut anti-discrimination statutes are interpreted in accordance with federal precedent.   Kaytor v. Electric Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010).

**BACKGROUND**

The parties have filed statements of facts along with supporting exhibits and affidavits. These materials reflect the following factual background.

Plaintiff is a Hispanic male of Puerto Rican descent. He is employed by the State of Connecticut Judicial Branch as a Deputy Chief Judicial Marshal. From 2006 through May 6, 2013, plaintiff was assigned to the New Haven Judicial District and reported to Chief Thomas Bouley, a non-Hispanic male.

Plaintiff asserts that Chief Bouley commented at different times that all people on the island of Puerto Rico must be related. Plaintiff does not recall Chief Bouley's exact expression or the specific circumstances in which the comment was made.

**Evaluations**

For the rating period of September 30, 2001 through October 1, 2002, plaintiff received an overall rating of satisfactory. Chief Bouley signed his evaluation. For the rating period of October 1, 2003 through September 30, 2004, plaintiff received an overall rating of satisfactory. Plaintiff asserts that this evaluation was from Chief Marshal O'Donovan Murphy.

Plaintiff did not receive another evaluation until October 2009 for the September 1, 2008 through October 1, 2009 rating period. However, in 2006, during the period in which plaintiff had not received his evaluations, plaintiff was promoted to the position of Deputy Chief.

After the evaluations resumed, plaintiff received an overall rating of satisfactory for the rating period of September 1, 2008 through October 1, 2009, the period of September 1, 2009 through October 1, 2010, and September 1, 2011 through October 1, 2012.   These evaluations were all signed by Chief Bouley.

For the rating period of October 1, 2012 through September 30, 2013, plaintiff received a rating of unsatisfactory.   This evaluation was signed by Deputy Director of the Judicial Marshals Kevin Grosse.   Plaintiff also signed it under protest.   The evaluation for the period of October 1, 2013 to September 30, 2014 rated plaintiff as satisfactory and was also signed by Grosse.

**Letter of Expectations**

In January 2012, plaintiff received a Letter of Expectations, indicating that he was being put on a sixty-day probation period.   It stated:   "It is important that you recognize the need for and undertake serious and broad reaching changes in the manner in which you perform your duties and manage the office of Deputy Chief Judicial Marshal. Temporary, sporadic or inconsistent improvement will not be accepted.   Fundamental and serious changes are required."   The letter listed plaintiff's duties, including being responsible for the atmosphere of all personnel working under his direction; establishing cooperation between all persons under his direction and avoiding conflict and negativism; not engaging in rancor, hostility or harassment; performing his job duties in an atmosphere of congeniality; and conforming to the expectations of the Judicial

Branch and the Judicial Marshal Services.   The letter required plaintiff to ensure harmonious working relations between himself and the supervisory staff and not to address judicial branch staff in a loud, aggressive demeanor.

### Applications for Promotion

Plaintiff applied for promotions to a Chief position in Waterbury on August 13, 2012, and in Danbury on December 19, 2013.   He was not selected for either of the positions for which he applied.

### Administrative Leave and Suspension

On April 7, 2013, plaintiff was arrested after sending threatening text messages to his son and his son's girlfriend.   Plaintiff sent his son the following text message: "The next time either of you two fat fucks take Michael to your house without my knowledge, I swear, I promise, I will drive up you house and cave the both of your heads in! That's a promise!!!"

His son wrote back: "listen you little dicked fuck face. That motor cycle accident should have killed your good for nothing worthless fucking life. Come near my home I fucking dare you."

Plaintiff responded: "Don't call, come around, disappear. You wanted it that way, now keep it that way!! State the fuck away from all of us!! I don't want my sons around that ugly fucken animal you fucken sleep with around my son!!"   Plaintiff also wrote: "I'll see you in a little while, you can tell it to my face."

His son replied: "Just do the world a favor and drop dead."   Plaintiff sent a text message back stating: "I will, and I'm taken both of you with me."

After plaintiff reported his arrest to defendant, he was placed on administrative leave on April 9, 2013. Defendant's administrative leave policy provides: "Employees with criminal charges pending against them may be placed on administrative leave if the employee's presence at work could be harmful to the welfare, health or safety of the employee, members of the public, or co-workers, or if the pendency of criminal charges could compromise the effectiveness of the employee or the efficient functioning of the Branch."

Defendant maintains that at the April 11, 2013, investigatory meeting, plaintiff failed to cooperate with the investigation and changed his story numerous times about the content of the text messages that he had sent to his son. He indicated that he had texted that he was going to split his son's "noggin;" later said that he had texted that he was going to split his son's "head;" and then expressed that he had texted that he was going to bust his son's head. Plaintiff claimed to have deleted the text messages.

On January 30, 2013, plaintiff had a conversation with Chief Bouley, in which according to plaintiff's deposition testimony, plaintiff was "upset with him" and was "talking louder than usual." According to plaintiff, "sometimes when I'm talking to somebody, they think that I'm yelling and I'm just speaking loud because I can't hear too well …."

On April 23, 2013, an individual who had a traffic ticket presented plaintiff's business card at a courthouse. Defendant maintains that the individual indicated that plaintiff had told him to present the card and that the marshal would then take care of

him.   Defendant asserts that it appeared as if plaintiff had attempted to help the individual through his position.[3]

By letter dated May 22, 2013, the plaintiff was notified that there would be a predisciplinary meeting on May 29, 2013.   The letter stated that plaintiff had engaged in "conduct unbecoming of a judicial Branch Manager," and various violations of Judicial Branch policies.   It explained:   "These violations stem from your behavior in the workplace on January 30, 2013 [concerning a loud interaction with Chief Bouley], your off-duty conduct on April 7, 2013 [related to the arrest], your failure to cooperate fully and truthfully in the investigation your off-duty conduct on April 7, 2013, the images, jokes and comments displayed on your office bulletin board and your actions on April 23, 2013 [concerning the business card incident]."

On June 19, 2013, the plaintiff was notified that he was being suspended for five days.   The letter stated: "For the past three years you have been repeatedly addressed about your behaviors towards others in dealing with conflict.   You have been warned about this behavior and how it was impacting your work performance.   Unfortunately,

_____

[3] In his deposition testimony, plaintiff asserted that his evaluation contained false information about "all these trumped up little charges that they gave me on violations of policies and procedures such as a business card, the business card thing was, I went to a tailor to get a tux.   The gentlemen that was measuring me for the tuxedo had said that he had gotten some type of motor vehicle violation and he wanted to know what ---- how to go about it when he went to court.   I says it very simple.   I said you go there, and I explained it to him, you talk to the prosecutor.   I explained the process.   And in so, he said do you have a card or anything like that?   I gave him my card.   I says when you go to the courthouse, I said ask any one of the marshals, they'll tell you, they'll direct you and give you the information on what you need to do. … That's what I did with that business card, and I got charged with --- I don't know what they trumped up, saying I gave him a card trying to influence one way or another."

you failed to learn from those warnings and such exhibited behavior has resulted in off-duty conduct unbecoming to a Judicial Branch Manager." The letter delineated that plaintiff was being suspended because he had repeatedly changed his story regarding the circumstances of his arrest; he had refused to show his text messages to defendant and had denied any threatening behavior; he had inappropriately yelled at Chief Bouley over the telephone on January 30, 2013; he had inappropriate pictures on his bulletin board in his office; and he had continually attempted to minimize his actions by failing to cooperate in investigation into his conduct.

Plaintiff filed a complaint with the Connecticut Human Resources Organization ("CHRO") on June 16, 2014. His administrative complaint alleged that he had been retaliated against and denied a raise on January 1, 2014.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.   Celotex Corp., 477 U.S. at 323.   If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.   Liberty Lobby, 477 U.S. at 24.

Plaintiff claims disparate treatment on the basis of his evaluations, suspension, and his lack of promotion.

Title VII prohibits discrimination based on race, gender, religion, national origin or ancestry.   "Employment discrimination cases ... are said to fall within one of two categories: 'pretext' cases and 'mixed-motives' cases."   Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir. 1992).   Here, plaintiff sets forth that his claims should be analyzed under mixed motive analysis.   In considering plaintiff's claims, the Court is mindful that it does not "sit as a super-personnel department that reexamines an entity's business decisions" as long as the employer has not acted with a discriminatory animus.   Delaney v. Bank of America Corp., 766 F.3d 163, 169 (2d Cir. 2014).

Mixed Motive Analysis

Plaintiff bears the initial burden to prove that an illegitimate factor had a "motivating" or "substantial" role in the employment decision.   Tyler, 958 F.2d at 1181. If the plaintiff adduces direct evidence of discrimination, the burden shifts to the defendant to prove its affirmative defense that it would have reached the same decision even in the absence of the impermissible, discriminatory factor.   Id.   To warrant

8

such burden shift to defendant, plaintiff must be able to produce a "smoking gun" or at least a "thick cloud of smoke" to support his allegations of discrimination.   Raskin v. Wyatt Co., 125 F.3d 55, 60–61 (2d Cir. 1997) (listing as examples of such satisfactory evidence "policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the allegedly discriminatory attitude").   In the summary judgment context, plaintiff must provide sufficient direct evidence that would permit a reasonable jury to find that a discriminatory factor played a motivating role in plaintiff's termination.   Ames v. Cartier, Inc., 193 F. Supp. 2d 767, 767 (S.D.N.Y. 2002).

Pretext Analysis

Under the pretext analysis, plaintiff may establish his prima facie claim of discrimination in violation of Title VII by demonstrating that (1) he is a member of a protected class; (2) he was intentionally discriminated against on the basis of that protected class; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.   Dowrich-Weeks v. Cooper Square Realty, Inc., 2013 WL 4437071, at *1 (2d Cir. 2013); Joseph v. North Shore Univ. Hosp., 473 Fed. Appx. 34, 37 (2d Cir. 2012).   Although the plaintiff's initial burden is not onerous, he must show that the alleged adverse employment action was not made for legitimate reasons.   Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed

legitimate reason is actually a pretext for discrimination.   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Plaintiff may raise an inference of discrimination by showing that his employer treated him less favorably than similarly situated employees outside of his protected class for a similar offense.   Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).   However, in this context, plaintiff must demonstrate that these comparators are similarly situated in all material respects and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

Generally, discriminatory remarks must be accompanied by additional evidence of discrimination or demonstrate some connection to the employment decision relative to the time made, context or content.   Gonzalez v. Allied Barton Sec. Services, 2010 WL 3766964, at *5 (S.D.N.Y. Sept. 7, 2010).   Credibility assessments, resolution of conflicting versions of events and weighing of evidence are matters for a finder of fact at trial rather than a determination on summary judgment.   McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

The Court finds that plaintiff has established a prima facie case on his disparate treatment claims based on his suspension, unsatisfactory evaluation, failure to be evaluated, and failure to be promoted.

Suspension

Plaintiff alleges that Chief Bouley made his disparaging comment about Puerto Ricans on different occasions and treated plaintiff differently than Caucasian employees.   Defendant proffers that plaintiff was suspended based on his uncorrected

10

inappropriate on-duty behavior and his off-duty behavior relative to his arrest. Defendant refers to on-duty conduct including plaintiff's lack of cooperation during the investigatory meeting in which he allegedly changed his story and claimed to have deleted his texts; his posting of inappropriate pictures on his bulletin board; his yelling at his supervisor; and his handing out a business card to someone who presented the card at the courthouse.

Plaintiff's evidence is insufficient to provide direct evidence of a discriminatory animus that played a part in his suspension. The Court has little information about the context or number of times in which Chief Bouley made the assertedly discriminatory comments.

Further, plaintiff has failed to provide direct evidence of competent comparators who are similarly situated in all material respects. Plaintiff maintains that two Caucasian employees, Nick Pesce and Michael Schweitzer, were arrested but not disciplined. Pesce, a Chief Marshal, was arrested in 2012, for driving under the influence; defendant maintains that it does not discipline employees based on arrests for driving under the influence. Schweitzer, who is a marshal, was arrested in 2016.[4] His discipline is yet to be determined because no investigatory process has occurred due to Schweitzer's military leave. Defendant's treatment of these individuals does not indicate a discriminatory animus because (1) plaintiff was not disciplined solely on the basis of his arrest; (2) Pesce's arrest differs in nature from that of plaintiff; and (3)

_____

[4] Plaintiff asserts that Schweitzer was arrested for hitting his wife.

Schweitzer's investigatory process has yet to occur and his discipline has yet to be determined.   Further, plaintiff has not shown that the asserted comparators had been placed on probation or had similar work histories.

However, the Court will deny summary judgment pursuant to the pretext analysis. Construing the inferences of fact in favor of plaintiff, the Court finds that genuine issues of fact exist concerning defendant's assertion that plaintiff was uncooperative during the investigation.   A jury could reasonably find that plaintiff did not change his story but used language that conveyed the same meaning.

Similarly, plaintiff's response to the Human Resources Director Maria Kewer's question about whether he threatened to go to his son's house is not so evasive as to demonstrate an irrefutable lack of cooperation.[5]   The Court must construe all of the evidence and inferences of fact in plaintiff's favor in ruling on this motion for summary judgment.   Accordingly, the Court finds that the question of whether defendant's proffered legitimate reasons are pretext should be resolved by a jury.   Summary judgment will be denied on this claim.

Evaluation

Plaintiff asserts that he suffered discriminatory disparate treatment when he received an unsatisfactory evaluation that prevented him from receiving a raise.   He claims that the evaluation was authored by Chief Bouley.   Defendant proffers that it is customary practice to evaluate an employee based on his entire performance during the

---

[5]  Plaintiff answered that he had texted, "you can tell me to my face."   In fact, he had texted:   "I'll see you in a little while, you can tell it to my face."

rating period during that time and to include discipline that occurred during that rating period.

Plaintiff maintains that the evaluation's reference to his suspension and behavior leading to his suspension are the result of input from Chief Bouley to his supervisor Deputy Chief Grosse; and that Kewer had instructed Chief Bouley to insert the negative information into the evaluation.

Under the "cat's paw" theory of liability, the impermissible bias of an individual who played a meaningful role in the employment decisionmaking process can taint the ultimate employment decision.   See Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999); Zagaja v. Village of Freeport, 2013 WL 2405440, at *12 (E.D.N.Y. June 3, 2013).   This Court has also described the cat's paw scenario as occurring when a nondecisionmaker with a discriminatory motive "dupes an innocent decisionmaker into taking action against plaintiff."   Saviano v. Town of Westport, 2011 WL 4561184, at *7 (D. Conn. Sept. 30, 2011).

Here, plaintiff attempts to provide direct evidence of discrimination with speculation about the discriminatory purpose underlying any instruction from Kewer and Bouley to Grosse.   Accordingly, plaintiff has failed to satisfy the mixed-motive burden of adducing direct evidence that discrimination played a part in his receipt of an unsatisfactory evaluation.   However, in light of plaintiff's deposition testimony concerning Chief Bouley's comments about Hispanics and the potential that Chief Bouley was involved in his unsatisfactory evaluation, the Court finds that genuine issues of fact exist regarding pretext.   At trial, plaintiff can examine Chief Bouley and Kewer

regarding their respective roles and intent relevant to the evaluation process and defendant's customary evaluation practices.   Summary judgment will be denied on this claim.

Failure to Evaluate

Plaintiff alleges that he was discriminated against by defendant due to the failure to provide him with annual performance evaluations between November 2004 and October 2009.   He asserts that the absence of performance evaluations hindered his advancement.   It is undisputed that he was actually promoted to the position of Deputy Chief in 2006, during the period in which he was not afforded an evaluation.

Plaintiff fails to provide direct evidence that this failure to evaluate was attributable to discriminatory animus as required for mixed motive analysis.   Similarly, plaintiff has not adduced evidence raising an inference of discrimination related to the lack of evaluation to satisfy the prima facie showing pursuant to pretext analysis. Accordingly, the Court finds that plaintiff has not established that he suffered an adverse employment action that occurred under circumstances giving rise to an inference of discrimination.   The Court will grant summary judgment on this claim.

Failure to Promote

Plaintiff asserts that he was discriminated against when defendant failed to promote him.   Defendant argues that this claim is time barred because it was not exhausted in his administrative filing.

Plaintiff's CHRO complaint was filed on June 16, 2014, without any allegations of a failure to promote claim.   He had applied for the Chief position in Waterbury on

August 13, 2012, and he applied for the Chief position in Danbury on December 19, 2013.   Plaintiff had 300 days from the alleged discriminatory conduct to file an administrative charge, alleging a failure to promote claim.   42 U.S.C. § 2000e-5(e)(1). However, plaintiff failed to submit such an administrative charge.

Discriminatory conduct not timely charged before the administrative agency is time barred.   Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982) (administrative filing is not a jurisdictional prerequisite to suit in federal court but a requirement similar to a statute of limitations).   Discrete acts of discrimination such as termination, failure to promote or refusal to hire are considered separate actionable unlawful employment actions, which require exhaustion.   Delrio v. Univ. of Connecticut Health Care, 292 F. Supp. 2d 412, 420 (D. Conn. 2003).

Here, the continuing violation doctrine cannot save his allegations from being considered as untimely.   According to the continuing violation doctrine, if a plaintiff files an administrative charge that is timely as to any incident of discrimination that is in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely.   O'Hazo v. Bristol-Burlington Health Dist., 599 F. Supp. 2d 242, 253 (D. Conn. 2009).   However, in National R.R. Passenger Corp. v. Morgan, the Supreme Court instructed that "[e]ach discrete discriminatory act starts a new clock for filing charges." 536 U.S. 101, 113 (2002).   In interpreting Morgan, the Second Circuit held that claims based on discrete acts are time barred if such acts took place outside the statute of limitation even when undertaken pursuant to a general policy that gives rise to other discrete acts that occur within the limitations period.   Chin v. Port Auth. of

15

New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012).   The allegations relative to the failure to promote constitute a separate actionable "unlawful employment practice." See Morgan, 536 U.S. at 114; see also Lee v. Dept. of Children and Families, 939 F. Supp. 2d 160, 170 (D. Conn. 2013) (citing examples of discrete acts of unlawful employment practices).   Summary judgment will enter in defendant's favor on this claim.

Retaliation

Plaintiff alleges that his suspension and unsatisfactory evaluation were retaliatory actions due to complaints he made regarding discrimination.   Plaintiff maintains that he made complaints on October 29, 2009 about a hostile environment and racism by Chief Bouley; on November 4, 2009 about retaliation, discrimination and racism by Chief Bouley; and on December 4, 2012 about his performance evaluation.   Plaintiff also filed a written objection to his performance appraisal on November 19, 2013.   Defendant disputes that plaintiff engaged in protected activity on December 4, 2013, and it maintains that plaintiff cannot establish a prima facie case or pretext.

Generally, the burden shifting analysis applicable to discrimination claims applies equally to this claim of retaliation.   Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). A prima facie claim of retaliation requires plaintiff to show by a preponderance of evidence (1) that he engaged in protected activity, (2) that the employer was aware of the activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action.   Sarno v. Douglas EllimanGibbons & Ives., Inc., 183 F.3d 155, 159 (2d Cir. 1999).   However, a

Title VII plaintiff bringing a disparate treatment retaliation claim must prove that his protected activity was the "but for" cause of the challenged adverse employment action. Univ. of Tex Southwester Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). "But-for" causation does not require that retaliation be the only cause of the adverse employment action, but rather that the adverse action would not have occurred in the absence of the retaliatory motive. Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 (2d Cir. 2013).

A plaintiff may establish causation for purposes of the prima facie case by showing a very close temporal proximity between his protected activity and the retaliatory employment action; however, temporal proximity alone is insufficient to satisfy a plaintiff's burden to demonstrate evidence of pretext. Russell v. New York Univ., 2017 WL 3049534, at *35 (S.D.N.Y. July 17, 2017). Additional evidence of causation may include "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan, 737 F.3d at 846.

Defendant disputes that the plaintiff engaged in protected activity by challenging the performance evaluation on December 4, 2012, as plaintiff asserts. Title VII prohibits retaliation for a "protected activity," which includes (1) opposing employment practices prohibited under Title VII; (2) making a charge of discrimination; or (3) participating in an investigation, proceeding or hearing arising under Title VII. See Littlejohn v. City of New York, 795 F.3d 297, 315 (2d Cir. 2015). To qualify as protected activity, an employee's complaint must have been based on "a good faith,

reasonable belief" that plaintiff was opposing an employment practice made unlawful by Title VII." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013). The belief must be reasonable and characterized by *objective* rather than *subjective* good faith. Id. at 16.

Generally, protected activity is expressed in the form of filing a formal complaint with an agency or filing a lawsuit, but informal protests of discriminatory employment practices may fall within Title VII's protection. Staten v. City of New York, 2017 WL 293768, at *9 (S.D.N.Y. July 10, 2017). Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity. Batiste v. City Univ. of New York, 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017). An employer must have been able to have understood or reasonably have understood that plaintiff's complaint was directed at conduct prohibited by Title VII. See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011).

Here, plaintiff's opposition brief fails to address defendant's argument that he did not engage in protected activity on December 4, 2012. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Additionally, the Court appears to have no evidentiary material to assess whether plaintiff engaged in protected activity on December 4, 2012.

Summary judgment is also appropriate to the extent that plaintiff may assert a retaliation claim stemming from his objection to his November 2013 performance evaluation, because plaintiff has failed to show that his employer would have understood that his complaints were about discriminatory treatment rather than a poor personal relationship with Chief Bouley.   Review of plaintiff's comments objecting to his unsatisfactory evaluation reveals that plaintiff complained about his "seriously long history of irreconcilable differences" with Chief Bouley and unfair treatment without specifically invoking an opposition to employment practices prohibited under Title VII.

Additionally, plaintiff's complaints in October and November 2009 are not sufficiently proximate to the June 19, 2012 suspension or the November 2013 evaluation to establish a causal connection.   Green v. Avis Budget Group, Inc., 2017 WL 35452, at *18 (W.D.N.Y. Jan. 4, 2017) (two-year period between protected action and the adverse employment action does not suggest a causal connection).

Accordingly, the record is devoid of evidence raising an inference that the suspension or unsatisfactory evaluation would not have occurred absent a retaliatory animus.   Summary judgment will be granted on the claim of Title VII retaliation.

B.   Hostile Work Environment

Plaintiff asserts that defendant subjected him to a hostile work environment in violation of Title VII.   Defendant maintains that the conduct alleged does not give rise to a claim for actionable harassment.

To make out a hostile work environment claim, a plaintiff must present evidence (1) that the conduct in question was objectively severe or pervasive, that is, that it

19

created an environment that a reasonable person would find hostile or abusive; (2) that the plaintiff subjectively perceived the environment as hostile or abusive; and (3) that the plaintiff was subject to the hostile work environment because of his race or ethnicity. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).   A court must assess the evidence supporting a hostile work environment claim collectively and evaluate factors such as (1) frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is physically threatening or merely an offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance.   Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 23 (1993).   "[S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."   Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).   The Court considers all of plaintiff's allegations including those that are untimely for purposes of a disparate treatment claim; "a hostile work environment claim is treated as a continuing violation and treated as timely if one act contributing to the claim occurred within the 300-day period…."   Le v. New York State, Office of State Comptroller, 2017 WL 3084414, at *8 (N.D.N.Y. July 18, 2017).

In this instance, plaintiff has not established that the conduct was so severe and pervasive that it unreasonably interfered with plaintiff's work performance. Plaintiff's evidence fails to demonstrate that Chief Bouley's comments or any other of the alleged conduct subjected plaintiff to a work environment that was severe and pervasive in its hostility against plaintiff based on his race, ethnicity or national heritage.

Although he asserts that Chief Bouley made his derogatory jokes and comments at various times, plaintiff has failed to identify the context or specific frequency of the jokes and comments. Similarly, plaintiff offers no context to his claim that Chief Bouley rolled his eyes, made sneering facial expressions, and muttered under his breath in the presence of African-Americans and Hispanics. His assertion that Chief Bouley set another Hispanic employee up to fail is based on his opinion. His claims that Chief Bouley instructed him not to follow that Hispanic employee's orders without checking with Chief Bouley and that Chief Bouley failed to provide that Hispanic employee with the requisite level of support are supported only by assertions made in his deposition testimony. Plaintiff maintains that Chief Bouley toyed with Hispanics by calling meeting and that were later cancelled, but he can cite only one such incident in 2006. Further, plaintiff has not shown that his failure to be promoted stemmed from animosity toward individuals of Hispanic or Puerto Rican descent or contributed to the alleged hostile environment.

Plaintiff cannot establish a hostile work environment based on vague, unsubstantiated and self-serving assertions. Scarbrough v. Gray Line Tours, 2005 WL 372194, at *4 (W.D.N.Y. February 16, 2005). Accordingly, the Court will grant the motion for summary judgment on this claim.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [doc. #34] is GRANTED in part and DENIED in part. The Court GRANTS the motion for summary judgment on plaintiff's claims of disparate treatment based on the period of time in which he did not receive an evaluation and his failure to be promoted in 2012 and 2013; retaliation; and hostile environment. Plaintiff may present to a jury his claims of disparate treatment based on his suspension and unsatisfactory evaluation consistent with this ruling.

Within 15 days of this ruling's filing date, plaintiff is instructed to file an amended complaint consistent with this ruling.

/s/Warren W. Eginton

Warren W. Eginton
Senior U.S District Judge

Dated this 25th day of August, 2017 at Bridgeport, Connecticut.